## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: TIKTOK IN-APP BROWSER CONSUMER PRIVACY LITIGATION** | **MDL Docket No. 3067** |

## FIRST-FILED PLAINTIFF AND MOVANT AUSTIN RECHT'S
## CONSOLIDATED REPLY IN SUPPORT OF MOTION TO TRANSFER

First-filed Plaintiff and Movant Austin Recht ("Movant") respectfully submits this

consolidated reply[1] in support of his motion to transfer all pending *In-App Browser* Actions to

the Central District of California, pursuant to 28 U.S.C. § 1407.

## I.      INTRODUCTION

When Movant filed his Motion to Transfer, there were three *In-App Browser* Actions

pending in the United States.[2]  Now, just weeks later, the number of pending *In-App Browser*

Actions has increased to nine, with more expected.[3]  Each of the *In-App Browser* Actions was

---

[1] Movant submits a consolidated reply pursuant to J.P.M.L. Rule of Procedure 6.2(d) because he received more than one response in opposition to his Motion to Transfer.

[2] At the time of Movant's filing, there were two additional cases pending: *E.K., et al., v. TikTok, Inc., et al.*, Case No. 7:22-cv-10574-CS (S.D.N.Y.) ("*E.K.*") and *Kowalski v. TikTok, Inc., et al.*, Case No. 2:22-cv-04974-MAK (E.D. Penn.) ("*Kowalski*").

[3] Six additional cases have been filed, including: *Fleming v. TikTok Inc., et al.*, Case No. 2:22-cv-07370-JXN-JSA (D.N.J.) ("*Fleming*"); *Rahn v. TikTok, Inc., et al.*, Case No. 1:22-cv-07256 (N.D. Ill.) ("*Rahn*"); *Arroyo v. TikTok Inc., et al.*, Case No. 2:22-cv-09300-RGK-E (C.D. Cal.) ("*Arroyo*"); *Androshchuk v. TikTok Inc., et al.*, Case No. 2:23-cv-00108-DSF-PVC (C.D. Cal.) ("*Androshchuk*"); *Smith v. TikTok Inc., et al.*, Case No. 1:23-cv-00134-TMD (N.D. Ill.) ("*Smith*"); and *Bravo v. TikTok, Inc., et al.*, Case No. 1:23-cv-00225 (N.D. Ill.) ("*Bravo*").

modeled after Movant's first-filed complaint, and all assert near uniform allegations regarding Defendants' conduct and the injuries they caused.

No party opposes a transfer and consolidation of the *In-App Browser* Actions, although Defendants oppose the formation of a new MDL in the Central District of California and, instead, advocate for transfer of the *In-App Browser* Actions to the settled and terminated *Biometric Data* MDL.[4] With no party opposing a transfer and consolidation of the *In-App Browser* Actions, the Panel need only select a transferee venue.

Transfer of the *In-App Browser* Actions to the now-concluded *Biometric Data* MDL is inappropriate because the actions share no common questions of fact as required by 28 U.S.C. § 1407. Transfer to a new MDL in the Northern District of Illinois is also inappropriate because there is no purported "middle of the country" test that trumps the factors routinely used by this Panel to select a transferee venue. The Central District of California is the most appropriate transferee jurisdiction for multiple reasons, explained more fully below, including that the operative facts giving rise to class members' injuries occurred in Culver City, California where the first-filed complaint was filed, where Defendant TikTok maintains executive offices, and where the majority of the class members, evidence, documents and witnesses are located.

Accordingly, Movant respectfully requests that the Panel create a new MDL and transfer the *In-App Browser* Actions to the Central District of California.

---

[4] Defendants filed a Notice of Potential Tag-Along regarding the *Recht* Action in MDL No. 2948, which prompted the JPML Clerk to issue CTO-3. Movant timely filed a Notice of Opposition and Motion to Vacate CTO-3. That Motion will be fully briefed by January 30, 2023, and ready for decision at the next Panel hearing. Movant adopts and incorporates, by reference, all of the arguments included in the Motion to Vacate CTO-3 and Memorandum in support thereof. *In re TikTok, Inc., Consumer Privacy Litig.*, MDL No. 2948, ECF No. 108 and 108-1.

II.     **ARGUMENT**

A.     **No Party Opposes Transfer and Consolidation of the *In-App Browser* Actions**

The Panel received six responses to Movant's Motion to Transfer, including five from plaintiff respondents and one from Defendants. All plaintiff respondents, including lawyers representing plaintiffs in the prior *Biometric Data* MDL, agree that transfer to a new MDL is appropriate here. All proponents of a new MDL argue that the *In-App Browser* Actions easily satisfy the requirement of Section 1407 for transfer to a new MDL because (1) they involve common questions of fact; (2) consolidation will further the convenience of the parties; and (3) transfer will promote just and efficient conduct of the *In-App Browser* Actions. The proponents of a new MDL further agree that transfer will (a) eliminate duplicative discovery; (b) avoid conflicting rulings and schedules; (c) reduce litigation costs; and (d) conserve the time and effort of the parties, attorneys, witnesses, and courts.

Defendants, for their part, do not oppose transfer and consolidation of the *In-App Browser* Actions or argue that the *In-App Browser* Actions fail to satisfy the requirements of Section 1407. As such, they concede that transfer and consolidation of the *In-App Browser* Actions is warranted.

B.     **Transfer of the *In-App Browser* Actions to the Terminated *Biometric Data* MDL is Inappropriate**

1.     The *In-App Browser* Actions Are Unrelated to the Terminated *Biometric Data* MDL

Defendants half-heartedly argue that the *In-App Browser* Actions should be transferred to the terminated *Biometric Data* MDL because of a cryptic reference to "internet browsing history" in the Complaint filed in the *Biometric Data* MDL, and because the release included in the *Biometric Data* MDL settlement agreement vaguely references the "the collection and use of any user data." Defendants are wrong on both counts.

3

As a threshold matter, the reference to "internet browsing history" in the *Biometric Data* MDL complaint refers to TikTok's harvest of biometric user data from the **TikTok app**. By contrast, the *In-App Browser* Actions concern TikTok's secret data harvesting efforts that occur while users access **third-party websites**. Indeed, the *In-App Browser* Actions are wiretap actions founded on information that first came to light on August 18, 2022, in a report published by a software researcher, Felix Krause, detailing the risk posed by TikTok's use of JavaScript codes inserted into third-party websites.[5] The Krause article was published nearly **two years after** the *Biometric Data* MDL plaintiffs reached a settlement of their claims.[6] Thus, the *Biometric Data* MDL did not – and could not – include allegations involving TikTok's use of JavaScript code to track user activity on third party websites because those facts were not yet known to TikTok app users or the general public.

Defendants' strained interpretation of the *Biometric Data* MDL complaint aside, the fact that the *In-App Browser* Actions are not related to the *Biometric Data* MDL is confirmed by the new filing of an *In-App Browser* action by members of plaintiffs' leadership team in the *Biometric Data* MDL.[7] Those lawyers were responsible for preparing the operative complaint in the *Biometric Data* MDL and were privy to the facts and claims underlying the *Biometric Data* MDL as well as the settlement negotiations that yielded the *Biometric Data* settlement.[8] And,

---

[5] *Recht v. TikTok Inc., et al.*, Case No. No. 2:22-cv-08613-MEMF-AGR (C.D. Cal.), ECF No. 1 (the "*In-App Browser* Complaint"), at ¶¶ 99-102, 139-144.

[6] *See Biometric Data* Settlement Agreement and Release, signed on September 4, 2020, available at https://angeion-public.s3.amazonaws.com/www.TikTokDataPrivacySettlement.com/docs/Settlement+Agreement+and+Release.pdf.

[7] *In re TikTok, Inc., Consumer Privacy Litig.*, Case No. 1:20-cv-04699, ECF No. 94, at pp. 2-6.

[8] *Id.*, at pp. 3-6.

4

they determined that their related *In-App Browser* Action is a new case, unrelated to the *Biometric Data* MDL.

In short, all plaintiffs against whom Defendants filed Notices of Potential Tag-Along in MDL 2948[9] have filed a Notice of Opposition indicating their intention to move to vacate the resulting conditional transfer orders.[10]  As such, every single party who has filed an *In-App Browser* Action against Defendants believe that the *In-App Browser* Actions are unrelated to the *Biometric Data* MDL.

The situation is unsurprising because the crux of the *In-App Browser* Actions is that Defendants illegally and secretly used JavaScript code to intercept and access Movant's and Class Members' personal activity on third-party websites outside of the TikTok app.[11]  As such, the *In-App Browser* plaintiffs had every detail of their communications with such third-party websites intercepted and tracked by Defendants.  None of those allegations were included in the *Biometric Data* MDL.

As the Panel previously recognized, the cases transferred into the *Biometric Data* MDL alleged, as common questions of fact: "**defendants' conduct with respect to the scanning, capture, retention and dissemination of facial geometry and other biometric information of users of the app**."  *In re: TikTok, Inc., Consumer Privacy Litig.*, 481 F. Supp.3d 1331, 1331 (J.P.M.L. 2020) (emphasis added).  As the *Biometric Data* Complaint alleged, Defendants invaded their users' privacy by employing specific methods and tools to extract data, including:

---

[9] *In re TikTok, Inc., Consumer Privacy Litig*, MDL No. 2948, ECF Nos. 96, 99, 103, 106, and 121.

[10] *Id.* at ECF Nos. 102, 107, 110, 114, and 116.

[11] *In-App Browser* Complaint, at ¶¶ 2-5, 101.

tracking, monitoring, and recording users' **private videos recorded** in the app before users are given a choice whether to save or post them[12], collecting data, including **close-ups of faces and private acts** unintended for public consumption[13], thumbnail images **from recorded videos**[14], **biometric features** and information **from recorded videos**[15], and login information from other social media accounts[16], private messages[17], information added to users' digital "clipboards"[18], and **face geometry scans**[19].

When the *Biometric Data* MDL plaintiffs moved for preliminary approval, they described their claims under the Illinois Biometric Information Privacy Act as their "core claims," and represented that their "core claims" arose when Defendants used "a complex system of artificial intelligence to recognize facial features in users' videos, which allows the user to use various filters and stickers.[20] Those "core claims" never included allegations regarding TikTok's use of JavaScript code to intercept and monitor users' activities **on third-party websites**.[21]

---

[12] *In re TikTok, Inc., Consumer Privacy Litig.*, Case No. 1:20-cv-04699 (N.D. Ill.), ECF No. 114, at ¶¶ 145-152 (the "*Biometric Data* Complaint") (emphasis added).

[13] *Id.*, at ¶ 145 (emphasis added).

[14] *Id.*, at ¶ 150 (emphasis added).

[15] *Id.*, at ¶ 152 (emphasis added).

[16] *Id.*, at ¶ 158 (emphasis added).

[17] *Id.*, at ¶ 176 (emphasis added).

[18] *Id.*, at ¶ 181 (emphasis added).

[19] *Id.*, at ¶ 240 (emphasis added).

[20] *See In re TikTok, Inc., Consumer Privacy Litig.*, Case No. 1:20-cv-04699 (N.D. Ill.), ECF No. 122, at p. 3.

[21] *Id.*

The differences between the conduct and injury alleged by the two groups of actions weigh against transfer to the *Biometric Data* MDL. *See, e.g., In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873, Order Vacating Conditional Transfer Order, ECF No. 1511, at p. 2 (J.P.M.L. Aug. 3, 2022) (vacating conditional transfer order of case not involving aqueous film-forming forms); *In re: Google Digital Advertising Antitrust Litig.*, MDL No. 3010, Order Vacating Conditional Transfer Order, ECF No. 194, at p. 2 (J.P.M.L. June 1, 2022) (vacating conditional transfer where "non-common issues far exceed the common issues"); *In re: Navistar Maxxforce Engines Marketing, Sales Practices & Prods. Liab. Litig.*, MDL No. 2590, Order Vacating Conditional Transfer Order, ECF 208, at 2 (J.P.M.L. Feb. 4, 2018) ("unique factual and legal inquires" "likely will overwhelm any commonalities that may exist").

Defendants attempt to argue for transfer to the unrelated *Biometric Data* MDL fall flat for multiple reasons. First, Defendants' argument that the *Biometric Data* MDL was "designed to challenge *all* of TikTok's consumer data collection practices in one action[22] does not hold up against the Panel's description of the common questions of fact in the *Biometric Data* MDL, the actual allegations in the *Biometric Data* Complaint, the scope of the classes in both cases and the class period, and the *Biometric Data* plaintiffs' description of their claims during the preliminary approval briefing.

Second, as discussed above, Defendants' limited citation to the *Biometric Data* Complaint is similarly unpersuasive because Defendants have taken it out of context. None of the allegations of the complaint in the *Biometric Data* MDL refer to the surreptitious interception of every detail of users' activity on third-party websites. Defendants also fail to cite reliance on

---

[22] *In re TikTok In-App Browser Consumer Privacy Litig.*, MDL No. 3067, ECF No. 22, at p.2.

those allegations as the basis for any claim asserted in the *Biometric Data* MDL. Indeed, there were no wiretap claims ever asserted in the *Biometric Data* MDL.

Third, Defendants distort Judge Lee's preliminary approval ruling in the *Biometric Data* MDL. Judge Lee did not say that "claims alleging improper collection of internet browsing information through the app . . . may be susceptible to dismissal."[23] Rather, Judge Lee noted that some of the *Biometric Data* plaintiffs' claims could be subject to the App's terms of service and privacy policy. However, Defendants' Terms of Service and Privacy Policy say nothing about the Defendants' use of JavaScript code insertions to track every detail and keystroke of an individual's activity on third-party websites, let alone internet browsing history.[24]

In light of the foregoing, the *In-App Browser* Actions share no common questions of fact with the cases in the *Biometric Data* MDL. As further argued in Movant's Motion to Vacate CTO-3, the *In-App Browser* Actions also assert novel legal claims and seek forms of relief that the *Biometric Data* plaintiffs did not assert or seek. As one particularly glaring example, the injunctive relief sought in the *Biometric Data* MDL includes no mention of Defendants' wiretapping activities through the use of JavaScript code or the interception of personal information and data with third-party websites.

Against that backdrop, Judge Lee discussed the "affirmative obligations" that outline the specific conduct the *Biometric Data* MDL defendants must refrain from engaging in:

---

[23] *In re TikTok In-App Browser Consumer Privacy Litig.*, MDL No. 3067, ECF No. 22, at p.2.

[24] *In re TikTok, Inc., Consumer Privacy Litig.*, 1:20-cv-04699, ECF No. 261 at pp. 50-51 and n.6; *see also* "Privacy Policy," https://www.tiktok.com/legal/page/us/privacy-policy/en (describing information that Defendants collect from users when they use the Platform (but not JavaScript code), including "internet or other network activity information such as . . IP address, geolocation-related data, unique device identifiers, browsing and search history (including content [users] have viewed in the Platform)" but not mentioning JavaScript code insertions that track every detail of activity on third party websites.

a.   Using the TikTok App ("App") to collect or store a user's biometric information or identifiers (as defined by applicable law);

b.   Using the App to collect geolocation or GPS data;

c.   Using the App to collect information in user's clipboards;

d.   Using the App to transmit United States user data outside of the United States;

e.   Storing United States user data in the databases outside of the United States; or

f.   Pre-uploading United States user-generated content.

Clearly, the *Biometric Data* MDL did not address wiretapping through Defendants' use of JavaScript code inserted into third party websites, or it would have been included as part of the conduct from which Defendants were enjoined. Indeed, Defendants' wiretapping conduct is alleged to continue to this day.

Finally, Defendants note that one of the new *In-App Browser* Actions filed in the Northern District of Illinois – the *Rahn* action - was "brought to the attention of the judge in MDL No. 2948, in response to which she issued an order asking whether Defendants believe 'the *Rahn* action should be dismissed pursuant to the Court's earlier orders.'" Defendants neglected to advise this Panel that they have requested that the judge in MDL No. 2948 stay the *Rahn* case pending the outcome of the proceedings before this Panel.[25]

2.   The Panel Should Form a New MDL for the *In-App Browser* Actions

Defendants advance no compelling argument prohibiting the formation of a new MDL where, as here, the new MDL would include cases asserting new facts, claims, and injuries. The *In-App Browser* Actions, unlike the decisions cited by Defendants, do not share common

---

[25] *In re TikTok, Inc., Consumer Privacy Litig.*, Case No. 1:20-cv-04699, ECF No. 283.

discovery with the cases in the terminated *Biometric Data MDL*,[26] do not share substantial

overlap in the core facts at issue in the terminated *Biometric Data MDL*,[27] or share factual

questions arising out a common course of conduct at issue the cases in the terminated *Biometric

Data MDL*.[28]

 Where, as here, there is no overlap in the core or common factual issues and discovery

will not overlap, the Panel has previously and repeatedly vacated conditional transfer orders and

denied transfer to an old, unrelated MDL.  *See, e.g., In re: Aqueous Film-Forming Foams Prods.

Liab. Litig.*, MDL No. 2873, ECF No. 1511 at p. 2 (J.P.M.L. Aug. 3, 2022) (vacating conditional

transfer order of case not involving aqueous film-forming forms); *In re: Google Digital

Advertising Antitrust Litig.*, MDL No. 3010, ECF. No. 194 at p. 2 (J.P.M.L. June 1, 2022)

(vacating conditional transfer where "non-common issues far exceed the common issues"); *In re:

Navistar Maxxforce Engines Marketing, Sales Practices & Prods. Liab. Litig.*, MDL No. 2590,

ECF. 208 at 2 (J.P.M.L. Feb. 4, 2018) (vacating conditional transfer where "unique factual and

legal inquires" "likely will overwhelm any commonalities that may exist").

---

[26] *In re Aqueous Film-Forming Forming Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1393 n.5
(J.P.M.L. 2018) (denying a second MDL because doing so would "result in unnecessary
duplication with respect to common discovery").

[27] *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 396 F. Supp. 3d 1366, 1367
(J.P.M.L. 2019) (denying a second MDL because the putative class actions and individual
actions would substantially overlap regarding the core factual issues, parties, and claims).

[28] *In re Frito-Lay N. Am., Inc. "All Natural" Litig.*, 908 F. Supp. 2d 1379, 1379-80 (J.P.M.L.
2012) (creating two MDLs was unnecessary because "all seven actions share factual questions
arising out of allegations that Frito-Lay markets and labels certain food products grown from
genetically modified organisms as "All Natural").

3.     The Injunction Against Further Litigation in the *Biometric Data*
       Settlement Cannot Enjoin the *In-App Browser* Actions

Defendants also argue that a "No Further Litigation" clause in the *Biometric Data*

settlement bars the *In-App Browser* Actions.  Defendants' argument fails for multiple reasons.

First, the Nationwide Class and California Subclass in the *In-App Browser* Actions were

not members of the *Biometric Data* classes.  The Nationwide Class and Illinois Subclass certified

for settlement purposes in the *Biometric Data* MDL included persons who used the video-

sharing functions of the TikTok application.[29]  However, the Nationwide Class, California

Subclass and state subclasses defined in the *In-App Browser* Actions include TikTok users who

visited external third-party websites.[30]  The classes, therefore, do not overlap.  The *In-App*

*Browser* Actions also assert different claims that entitle them to different relief.[31]  The

settlement terms outlined by Judge Lee, including the class definitions and the "core claims"

alleged, confirm that the *Biometric Data* MDL did not encompass the claims and injuries

asserted in the *In-App Browser* Actions.  As such, the *In-App Browser* class members were not

members of the *Biometric Data* classes, were not represented by any counsel in the *Biometric*

---

[29] *In re TikTok, Inc., Consumer Privacy Litig.*, ECF No. 264, at ¶ 2 (defining the Nationwide
Class and the Illinois Subclass as all persons who "used the  App – the TikTok video-sharing
application (or its Musical.ly predecessor) distributed in the U.S. . . . to create videos prior to
September 30, 2021").

[30] *See In-App Browser* Complaint, at ¶ 145.

[31] Violations of the Federal Wiretap Act entitle the prevailing party to, among other things,
statutory damages of whichever is the greater of $100 per day per violation or $10,000.  18
U.S.C. § 2520.  California's Invasion of Privacy Act similar allows for the recovery of $5,000
per violation, or three times the amount of damages sustained as a result of a violation.  Cal.
Penal Code § 637.2.  Neither of these remedies were sought, or recovered, by the *Biometric Data*
plaintiffs.

*Data* MDL, were not required to request exclusion, and cannot be bound by the terms of the *Biometric Data* settlement.

Second, the class settlement and administration process in the *Biometric Data* MDL did not provide class members in the *In-App Browser* Actions with any notice that their claims were potentially being settled out from under them or that they needed to request exclusion. The certified settlement classes only included users who used TikTok as a video-sharing application, not to access third-party websites.[32] And, the class notices made clear that the *Biometric Data* settlement resolved claims related the video recording, video uploading, and video liking that were at issue in the *Biometric Data* MDL, rather than TikTok's tracking of activity on third-party websites.

In fact, the *Biometric Data* MDL's settlement website homepage provide the following notice to class members about the nature of the case and the type of data privacy at issue:[33]

---

**If you and/or your minor child used the TikTok and/or Musical.ly application, You May Be Entitled to a Payment from a Class Action Settlement.**

**If you live in Illinois and used the TikTok app in Illinois to create videos, you may be entitled to up to 6x the Payment.**

- Plaintiffs filed a class action complaint alleging that TikTok, Inc. f/k/a Musical.ly, Inc; ByteDance, Inc.; Musical.ly n/k/a TikTok, Ltd. and Beijing ByteDance Technology Co. Ltd. (collectively, the "Defendants"), violated federal and state law by collecting and using, without sufficient notice and consent, Plaintiffs' personal data in connection with their use of the TikTok - Make Your Day video-sharing application (and/or its predecessor app Musical.ly) distributed in the U.S. (the "App.").

---

As noted on the website, the *Biometric Data* MDL class action alleges TikTok collected, and used, "without sufficient notice and consent, Plaintiffs' personal data **in connection with**

---

[32] *See In re TikTok, Inc., Consumer Privacy Litig.*, Case No. 1:20-cv-04699 (N.D. Ill.), ECF No. 122, at p. 11.

[33] The *Biometric Data* MDL Class Settlement Website, at tiktokdataprivacysettlement.com (last accessed on 12/21/2022).

**their use of the TikTok – Make Your Day video-sharing application** (and/or its predecessor app Musical.ly) distributed in the U.S." (emphasis added). The definition and notice are consistent with the *Biometric Data* MDL's focus on users using the video-sharing function in the TikTok app, rather than while accessing third-party websites. A potential class member who reads that description would reasonably interpret it to mean that he or she would not be entitled to relief for anything other than use of the "Make Your Day" video-sharing app. Such exclusion would include Movant and all other plaintiffs who were injured because their personal activities on third-party websites were intercepted and monitored by Defendants.

Moreover, the Claim Form provided to class members in the *Biometric Data* MDL only asks three questions, **none of which relate to Plaintiffs' access of third-party websites, or Defendants' interception of personal information and data on third-party websites:**[34]

| II. CLASS MEMBER DETAILS | |
|---|---|
| Do you currently reside in the United States? | Yes ☐ <br> No ☐ |
| Are you both (1) a resident of Illinois (2) who used the TikTok - Make Your Day video-sharing application (and/or its Musical.ly predecessor) to **create** videos while living in Illinois? | Yes ☐ <br> No ☐ |
| Did you use the TikTok - Make Your Day video-sharing application (and/or its Musical.ly predecessor) distributed in the U.S. prior to September 30, 2021? | Yes ☐ <br> No ☐ |

---

[34] *See* https://angeion-public.s3.amazonaws.com/www.TikTokDataPrivacySettlement.com/docs/TikTok+Claim+Form+Draft+v2+20211019.pdf (last accessed on 12/29/2022).

Third, even if the *Biometric Data* MDL did encompass some of the *In-App Browser* claims, the *In-App Browser* Action's allegations of Defendants' improper and surreptitious use of JavaScript code occurred before and continue well beyond September 30, 2021, the end of the class period applicable to the *Biometric Data* MDL settlement. Therefore, the *In-App Browser* Actions would receive **no relief at all** if transferred to the *Biometric Data* MDL and forced to subsume their claims into the now terminated *Biometric Data* MDL settlement.

Quite simply, the *In-App Browser* Actions do not fall within the "No Further Litigation" clause of the *Biometric Data* settlement.

C.     **The *In-App Browser Actions Should be Transferred to the Central District of California***

     1.     <u>Respondents Manufacture a "Middle of the Country" Test to Justify Transfer to the Northern District of Illinois</u>

Multiple respondents urge the Panel to create a new MDL in the Northern District of Illinois, relying on a purported "middle of the country" test because "the Northern District of Illinois represents the most central location and the only location where every party is less than five hours away by air." That consideration alone, however, does not overcome the factors routinely considered by the Panel in selecting a transferee venue. Here, all of the factors considered by the Panel in the choosing a transferee venue heavily weigh in favor of the Central District of California as the transferee district. The Central District is where the seminal action (*Recht*) was filed, where Defendant TikTok maintains its headquarters, the where the majority of the putative class members, witnesses and documents exist and where many of the *In-App Browser* Actions have been filed. Additionally, California has a strong anti-wiretapping statute with a $5,000 civil penalty, whereas **no plaintiff who filed a case in the Northern District of Illinois has asserted a claim arising under any Illinois wiretapping law**.

The Panel decisions cited by respondents in favor of the Northern District of Illinois are inapposite. For example, *In re Library Editions of Children's Books*, 297 F. Supp. 385, 386-87 (J.P.M.L. 1968) transferred cases for "a number of reasons" only the last of which was the central location. *Id.* (transferring for "a number of reason" including where the seminal action was filed, where parties had sought to intervene in and/or seek admittance into the seminal action, where the documents existed, and where the most defendants were named).

*In re Sonic Corp. Customer Data Sec. Breach Litig.*, 276 F. Supp. 3d 1382, 1383 (J.P.M.L. 2017), cited by some supporters of the Northern District of Illinois, is similarly unsupportive of a "middle of the country" test. That decision merely described the Northern District of Ohio as "a centrally-located and easily accessible location," but the Panel transferred the cases to that jurisdiction because "all responding plaintiffs support this district, in the first instance or in the alternative." *Id.*

Here, the majority of plaintiffs have already filed in[35] and/or support transfer to the Central District of California.[36] Given that five of the nine pending cases are already filed in and/or support transfer to the Central District of California, the *Sonic Corp.* decision weighs in favor of transfer there.

Finally, *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1379, 1379 (J.P.M.L. 2017) similarly fails to support a "middle of the country" test. There, the Panel was faced with thousands of actions about an epidemic affecting every state and territory in the United States. The Northern District of Ohio was selected for a number of reasons described by the Panel,

---

[35] *Recht, Arroyo,* and *Androshchuk* are all filed in the Central District of California.

[36] *Fleming* supports, and *E.K.* do not oppose, transfer to the Central District of California. *In re TikTok In-App Browser Consumer Privacy Litig.*, MDL No. 3067, ECF Nos. 20 and 21.

including that: "Ohio has a strong factual connection to this litigation," "[t]he Northern District of Ohio presents a geographically central and accessible forum relatively close **to the defendants' various headquarters** in New York, Connecticut, New Jersey and Pennsylvania," and "**one of the Big Three distributor defendants, Cardinal Health, is based in Ohio**." As such, the *Nat'l Prescription Opiate* decision weighs in favor of transfer to the Central District of California because California – which has the largest population and number of potential class members – has the strongest factual connection to the facts at issue and the largest number of potential class members, and is the state where both Defendants named in all of the *In-App Browser* Actions, and their relevant witnesses, reside.

> 2.  The Central District of California Satisfies the Majority of Factors Considered by the Panel When Selecting a Transferee Jurisdiction

Here, the factors that the Panel normally considers in selecting a transferee jurisdiction weigh in favor of transfer to the Central District of California. First, the key facts giving rise to class members' injuries overwhelmingly occurred in California. Whether a plaintiff or class member lived in California, Pennsylvania, New York, New Jersey, Florida, Washington, Illinois, Maryland, Massachusetts, Missouri, or any other state, their claims arose from conduct that occurred in and/or originated from Culver City, California, where Defendant TikTok maintains its executive headquarters. **It is not surprising, then, that Defendants previously supported transfer of the *Biometric Data* MDL to California**.[37]

---

[37] *In re TikTok, Inc., Consumer Privacy Litig.*, 481 F. Supp. 3d 1331, 1332 n.4 (J.P.M.L. 2020) ("Specifically, in their response, defendants state that they 'equally' support centralization in either the Northern District of Illinois or the Northern District of California").

It should also be noted that the Central District of California is the only jurisdiction in which TikTok's executives and critical witnesses will be subject to the subpoena power of a court that will conduct a trial on the merits against Defendants.

Other respondents represent to the Panel that TikTok maintains offices in Chicago, Illinois, based on citations to a news article.[38] However, that article is an old publication from 2021 indicating nothing more than TikTok "plans Chicago hiring spree, eyes Fulton Market office."[39] The stale news report contradicts Defendants' website which identifies offices in Los Angeles and New York, and fails to prove that any of the Defendants' witnesses reside, or any of the relevant evidence may be found, in Illinois.[40]

Second, the Central District of California is convenient for Defendants and their witnesses because they maintain offices in Culver City (TikTok) and Northern California (ByteDance), and the individuals who selected the Central District of California as the appropriate venue for their cases. The Central District of California has five major airports, including Los Angeles International Airport, whereas the Northern District of Illinois provides only one. The Central District of California provides the most convenient and accessible location for counsel, and will not inconvenience the plaintiffs whose depositions may be taken in their home jurisdictions.

Third, the first-filed *In-App Browser* Action was filed in the Central District of California. The Central District of California also now boasts three *In-App Browser* Actions,

---

[38] *In re TikTok In-App Browser Consumer Privacy Litig.*, MDL No. 3067, ECF No 1 at p.7; *id.*, ECF No. 23 at p. 4; *id.*, ECF No. 24 at p. 4.

[39] *See*, https://www.chicagobusiness.com/commercial-real-estate/tiktok-plans-chicago-hiring-spree-eyes-fulton-market-office (last visited January 14, 2023).

[40] *See* https://www.tiktok.com/about?lang=en (last visited January 14, 2023).

including two filed by out-of-state plaintiffs: *Arroyo* (Florida) and *Androshchuk* (Washington). The *Fleming* and *E.K.* plaintiffs filed responses to Movant's Motion to Transfer indicating their support for transfer into a new MDL in the Central District of California. There is no reason to force counsel in cases who have already selected and/or expressed support for the Central District of California, to fly to the Northern District of Illinois (where no Defendant, defense witness, or evidence is located) solely to convenience counsel who selected the Northern District of Illinois for their cases.

Fourth, the experience, skill, and caseloads of available judges weigh in favor of transfer to the Central District of California. As previously argued, Judge Frimpong is a well-qualified jurist with decades of legal experience who has the support of Movant, and the *Fleming* and *E.K.* plaintiffs. No party to this proceeding argues differently. Judge Frimpong's short tenure in the Central District should not deter the Panel from entrusting her with this new MDL given her decades of experience and qualifications. *See, In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 544 F. Supp. 3d 1371, at 1372 (J.P.M.L. 2021) ("Judge Rodolfo A. Ruiz II, to whom we assign the litigation, is a skilled jurist who has not yet had the opportunity to preside over an MDL. We are confident that he will keep this litigation on a prudent course").

Proponents of the Northern District of Illinois do not advance any Judge from that jurisdiction as a candidate to handle this new MDL. Notably, the *Biometric Data* MDL which was previously transferred to Judge Lee, is no longer assigned to him.

The caseloads and disposition times of the Central District of California and Northern District of Illinois also weigh in favor of transfer to the Central District. Cases in the Central District of California are currently averaging 23.5 months from filing to trial, whereas cases in

the Northern District of Illinois are averaging 48.9 months.[41]   The Central District of California

is currently handling only four MDL actions, whereas the Northern District of Illinois is

presiding over fourteen.[42]

>    3.      None of the Considerations that Justified Transfer of the *Biometric Data*
>            MDL are Present in This Case

The Panel's prior decision transferring the *Biometric Data* MDL to the Northern District

of Illinois, appears to have been guided by the fact that seven potential actions were then pending

in the Northern District of Illinois and that they had been proceeding in an organized fashion,

including consolidating actions, appointing interim lead plaintiffs' counsel, and filing a

consolidated complaint. *In re TikTok, Inc., Consumer Privacy Litig.*, 481 F. Supp. 3d 1331, 1332

(J.P.M.L. 2020).   Here, the proponents of the Northern District of Illinois cannot make such

claims – they do not outnumber the cases filed in the Central District of California and have not

been proceeding in an organized fashion beyond the cases in California.  *Id.*  Furthermore,

Defendants do not support transfer to the Northern District of Illinois unless it is to the settled

and terminated *Biometric Data* MDL.

Without any compelling facts in support of their desire for transfer to the Northern

District of Illinois, proponents of that jurisdiction are left with a single argument in support of

their proffered jurisdiction – the existence of three cases there.  Notably, no Illinois plaintiff

asserts claims under any Illinois anti-wiretapping law.  Moreover, they cannot claim that any of

the facts giving rise to class members' injuries occurred in Illinois, or that any of the witnesses

---

[41] United States District Courts – National Judicial Caseload Profile,
https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf.

[42] MDL Statistics Report – Distribution of Pending MDL Dockets by District (November 15,
2022), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-
November-15-2022.pdf.

reside in Illinois.  As such, counsel who filed in the Northern District of Illinois should have already anticipated significant travel to the Central District of California for depositions and other discovery.  Attending hearings there as well, will not greatly inconvenience them.

## III.   <u>CONCLUSION</u>

For each of the foregoing reasons, Movant respectfully requests an Order: (i) transferring to the Central District of California the related *In-App Browser* Actions, and any other tag-along actions asserting related claims, and (ii) consolidating or coordinating all the *In-App Browser* Actions with the *Recht* Action for pretrial purposes.

Dated:   January 17, 2023                           Respectfully submitted,

                                                          By:   */s/ Roland Tellis*
                                                                Roland Tellis

                                                                BARON & BUDD, P.C.
                                                                Roland Tellis (SBN 186269)
                                                                rtellis@baronbudd.com
                                                                Sterling Cluff (SBN 267142)
                                                                scluff@baronbudd.com
                                                                David Fernandes (SBN 280944)
                                                                dfernandes@baronbudd.com
                                                                Shannon Royster (SBN 314126)
                                                                sroyster@baronbudd.com
                                                                Jay Lichter (SBN 266960)
                                                                jlichter@baronbudd.com
                                                                15910 Ventura Boulevard, Suite 1600
                                                                Encino, CA 91436
                                                                Telephone: 818-839-2333
                                                                Facsimile: 818-986-9698

                                                                *Counsel for Plaintiff and Movant*
                                                                *Austin Recht*

20

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTI-DISTRICT LITIGATION**

**MDL-No. 3067 In re: TIKTOK IN-APP BROWSER CONSUMER PRIVACY
LITIGATION**

**<u>PROOF OF SERVICE</u>**

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial

Panel on Multidistrict Litigation, I hereby certify that copies of Movant Austin Recht's

Consolidated Reply in Support of Motion to Transfer was served on all parties in the following

cases electronically via ECF, or as indicated below, on January 17, 2023.

| |
|---|
| Clerk, Central District of California<br>Western Division<br>First Street U.S. Courthouse<br>350 W. 1st Street, Suite 4311<br>Los Angeles, CA 90012-4565 |
| Clerk, Southern District of New York<br>White Plains Division<br>Hon. Charles L. Brieant Jr. Federal Building and U.S. Courthouse<br>300 Quarropas Street<br>White Plains, NY 10601 |
| Clerk, Eastern District of Pennsylvania<br>Philadelphia Division<br>James A Byrne U.S. Courthouse<br>601 Market Street<br>Philadelphia, PA 19106 |
| Clerk, District of New Jersey<br>Martin Luther King Building & U.S. Courthouse<br>50 Walnut Street<br>Newark, NJ 07102 |
| Clerk, Northern District of Illinois<br>Dirksen U.S. Courthouse<br>219 S. Dearborn Street<br>Chicago, IL  60604 |

Clerk, Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, NE
Room G-255, North Lobby
Washington, DC 20544-0005

Israel David
israel.david@davidllc.com
Blake Hunter Yagman
blake.yagman@davidllc.com
ISRAEL DAVID LLC
17 State Street, Suite 4010
New York, NY 10004
Telephone: 212.739.0622
Facsimile: 212.739.0628

Counsel for Plaintiff: E.K., through her/his guardian, Shloma Kaller, individually and on
behalf of themselves and all others similarly situated
*S.D.N.Y. Case No. 7:22-cv-10574*

Kenneth J. Grunfeld, Esq.
kgrunfeld@golomblegal.com
GOLOMB SPIRT GRUNFELD, P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19104

Counsel for Plaintiff: Isabella Kowalski individually, and on behalf of all others
similarly situated
*E.D. Penn. Case No. 2:22-cv-04947*

2

Steven Sukert, Esq.
sukert@kolawyes.com
Jeff Ostrow, Esq.
ostrow@kolawyers.com
Jonathan M. Streisfeld, Esq.
streisfeld@kolawyers.com
Kristen Lake Cardoso
cardoso@kolawyers.com
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301

Counsel for Plaintiffs in the following actions:
*Arroyo v. TikTok Inc.,, et al., C.D. Cal. Case No. 2:22-cv-09300*
*Kowalski v. TikTok Inc., et al., E.D. Penn. Case No. 2:22-cv-04947*
*Smith v. TikTok Inc., et al., N.D. Ill. Case No. 1:23-cv-00134*

Joseph E. O'Neil
joneil@campbelltriallawyers.com
Katherine A. Wang
kwang@campbell-trial-lawyers.com
CAMPBELL CONROY & O'NEIL
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
Telephone:  610.964.1900

Counsel for TikTok, Inc. and ByteDance Inc. in the following actions:
*Kowalski v. TikTok Inc., et al., E.D. Penn. Case No. 2:22-cv-04947*
*Fleming v. TikTok Inc., et al., D.N.J. Case No. 2:22-cv-07470*

Anthony J. Weibell
aweibell@wsgr.com
Victor H. Jih
vjih@wsgr.com
Samantha A. Machock
smachock@wsgr.com
Thomas Robert Wakefield
twakefield@wsgr.com
Kelly H. Yin
kyin@wsgr.com
WILSON SONSININ GOODRICH AND ROSATI PC
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: 650.493.9300
Facsimile: 650.565.5100

Counsel for all Defendants in all actions.

---

James E. Cecchi
jcecchi@carellabyrne.com
CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: 973.994.1700
Facsimile: 973.994.1744

Counsel for Plaintiff Carina Fleming
*D.N.J. Case No. 2:22-cv-07470*

---

Daniel L. Warshaw
dwarshaw@pwfirm.com
PEARSON WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: 818.788.8300

Counsel for Plaintiff Candace Arroyo, individually and on behalf of all others similarly situated
*C.D. Cal. Case No. 2:22-cv-09300*

Jonathan M. Jagher
jjagher@fklmlaw.com
FREED KANNER LONDON & MILLEN LLC
932 Fayette Street
Conshohocken, PA 19428
Telephone: 610.234.6486

Counsel for Plaintiff Nate Rahn, individually, and on behalf of all others similary situated
*N.D. Ill. Case No. 1:22-cv-07256*

Katrina Carroll
katrina@lcllp.com
LYNCH CARPENTER, LLP
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: 312.750.1265

Counsel for Plaintiff Nate Rahn, individually, and on behalf of all others similarly situated
*N.D. Ill. Case No. 1:22-cv-07256*

Gary M. Klinger
gklinger@milberg.com
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866.252.0878

Counsel for Plaintiff Nate Rahn, individually, and on behalf of all others similarly situated
*N.D. Ill. Case No. 1:22-cv-07256*

Counsel for Plaintiff Cinnamon Smith, individually, and on behalf of all others similarly situated
*N.D. Ill. Case No. 1:23-cv-00134*

**Via E-Mail**
Michael R. Reese
mreese@reesellp.com
REESE LLP
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: 212.643-0500

Counsel for Plaintiff Anibeth Bravo, individually, and on behalf of all others similarly situated
*N.D. Ill. Case No. 1:22-cv-07256*

<u>**Via E-Mail**</u>
Kevin Laukaitis
klaukaitis@laukaitislaw.com
LAUKAITIS LAW FIRM LLC
737 Bainbridge Street #1555
Philadelphia, PA 19147
Telephone:

Counsel for Plaintiff Anibeth Bravo, individually, and on behalf of all others similarly situated
*N.D. Ill. Case No. 1:22-cv-07256*

Dated:   January 17, 2023                    Respectfully submitted,

                                   By:   */s/ Roland Tellis*
                                         Roland Tellis

                                         BARON & BUDD, P.C.
                                         Roland Tellis (SBN 186269)
                                         rtellis@baronbudd.com
                                         Sterling Cluff (SBN 267142)
                                         scluff@baronbudd.com
                                         David Fernandes (SBN 280944)
                                         dfernandes@baronbudd.com
                                         Shannon Royster (SBN 314126)
                                         sroyster@baronbudd.com
                                         Jay Lichter (SBN 266960)
                                         jlichter@baronbudd.com
                                         15910 Ventura Boulevard, Suite 1600
                                         Encino, CA 91436
                                         Telephone: 818-839-2333
                                         Facsimile: 818-986-9698

                                         *Counsel for Plaintiff and Movant*
                                         *Austin Recht*